## THE MAIPO.

### (District Court, S. D. New York. February 21, 1919.)

INTERNATIONAL LAW ⬅10—JURISDICTION IN REM—VESSELS OF FOREIGN GOVERNMENT.

A vessel owned and operated by a foreign sovereign state, although engaged in the business of a common carrier, is exempt from seizure on process in rem from an admiralty court of the United States in a suit by a private individual, whether based on contract or tort.

In Admiralty. Suit by the Commercial Shipping Company against the steamship Maipo. On motion to discharge respondent vessel from the custody of the United States marshal under process in rem on representations that she belongs to the Republic of Chile. Motion granted.

See, also, 252 Fed. 627.

Burlingham, Veeder, Masten & Fearey, of New York City, for the motion.

Macklin, Brown & Purdy, of New York City, opposed.

HOUGH, Circuit Judge (orally). Speaking strictly or technically, I think there is no legal difference between the aspect of affairs when the Maipo was brought to the attention of this court the last time (when Judge Mayer wrote an opinion), and the circumstances now presented.

It is true that on the previous occasion, when an endeavor to seize the Maipo was made, libelant was a shipper, who presumably knew that he was dealing with the Chilean government and not with a private shipowner, when he entered into the business which was the basis of his asserted maritime lien, whereas in this case the maritime lien is advanced by a stranger, and arises out of a tort.

Maritime liens arise in divers ways, but they are all the same when once created, and the reason for a seizure is always the same, viz., that the person who has a maritime lien, whether it arises in tort or in contract, has a proprietary interest in the res, and as such is entitled to establish it (after taking possession of the res) through a court proceeding.

Consequently, I should feel myself bound by the previous Maipo decision, and other decisions in this court, entirely irrespective of such views as I may entertain as to the justice, propriety or wisdom of any extension of this branch of the law; but, in truth, since I am sitting here in admiralty, and will be for some time yet, I think the bar is entitled to know that I do not think the enormous extension of sovereign privilege demanded by vessels in all kinds of business of late months and years indicates any change or advance in the law at all. The law remains the same. What has changed is the view which the governments of the world assume toward public duties or public enterprises.

Why was a war vessel exempt from seizure? Not because it was a war vessel, but because it was a part of the exercise or manifestation of sovereign power.

Why is any other vessel exempt? Why may any other piece of property be exempt? For the same reason, just as the sovereign himself is exempt.

Now, it may be the opinion of counsel, as it assuredly is my opinion, that when a sovereign republic, empire, or whatnot, goes into business and engages in the carrying trade, it ought to be subject to the liabilities of carriers just as much as any private person; but I think it must be plain that if I, in my official capacity, were to assert that view and enforce it, I would be assuming (in this case), as one of the humbler officers of the government of the United States, to define for the Republic of Chile what that republic should consider to be a governmental function.

If the Republic of Chile considers it a governmental function to go into the carrying trade, as would appear to be the case here, that is the business of the Republic of Chile; and if we do not approve of it, if we do not like it, if we do not wish any longer to accord that respect to the property so engaged, which has hitherto been accorded to government property, then we must say so through diplomatic channels, and not through the judiciary. Otherwise, the judiciary are really contributing to what might become, under conceivable circumstances, a casus belli.

Therefore, I feel, not only because there is no distinction between this case and the previous decision in the Maipo Case, but for the greater reason that the question is not justiciable, but diplomatic, that the motion must be granted, however hard it may be upon private persons; and I do think it is very hard.

An order may be submitted to the effect that it appearing to the court, upon the return of the order to show cause herein, that the process in this case having been inadvertently issued, in the sense that it was issued without knowledge of the facts now before the court, such process is set aside, upon the ground that the court is without jurisdiction to proceed by process in rem against the steamship Maipo, because the same is the property of and a portion of the sovereignty of the Republic of Chile, a country with which the government of the United States of America is on terms of peace and amity.