ELIJAH SMITH, Plaintiff, *v.* RUSSO ASIATIC BANK, Also Known as BANQUE RUSSO ASIATIQUE, Defendant.

Supreme Court, Special Term, Albany County, September 10, 1936.

*O'Connell & Aronowitz,* for the plaintiff.

*Uniacke & Kelly* and *Natanson, Pack & Scholer,* for the receivers.

*Borris M. Komar,* for intervening third parties.

SCHIRICK, J. This is an action, brought pursuant to section 977-b of the Civil Practice Act (added by Laws of 1936, chap. 917, effective June 8, 1936), for the appointment of a receiver of the assets and property of the defendant in the State of New York. The defendant is a dissolved Russian corporation, nationalized by the Soviet government. By orders made and entered in this action temporary receivers have been appointed, service of the defendant has been ordered by publication, and a second amended complaint has been authorized.

The notice of motion herein seeks an order: (1) dismissing the complaint on the ground that it is insufficient in law upon the face thereof; (2) vacating the order appointing temporary receivers on the ground that the papers upon which it was based were insufficient in law upon the face thereof to authorize the appointment of receivers and upon the further ground that said papers lack the necessary jurisdictional averments and evidential proof required by section 977-b of the Civil Practice Act. By stipulation the scope of the motion has been broadened to seek an order (3) vacating the order granting the plaintiff leave to file a second amended complaint as contrary to due process, as without the jurisdiction of the court, and (4) vacating the order for service by publication as contrary to due process, as being without the jurisdiction of the court.

Many objections have been raised upon the argument and upon the briefs, but it is evident therefrom that the court is confronted with only one serious issue: Is the plaintiff a " creditor " so as to be entitled to maintain this proceeding? The court will assume that upon this motion only the original complaint upon which the order appointing the receivers was made should be considered. The court will further assume that under the statute the plaintiff, to be entitled to bring this proceeding, must actually be a creditor; a mere allegation to that effect is insufficient.

The complaint and the affidavit upon which the order appointing temporary receivers was made both allege that in or about the months of July and August, 1917, one Bronstein entered into an agreement with the defendant whereby, for a good consideration, namely, the payment of a stipulated number of rubles to the defendant, the defendant agreed that it would send over to the said Bronstein and make available to him in the city of New York the sum of $120,571.37. Said Bronstein thereupon paid to the defendant the number of rubles by him under the said agreement to be paid

and duly performed all the terms and conditions of the said agreement on his part to be performed, but the defendant failed and still fails to make available to said Bronstein, in the city of New York or elsewhere, the said sum of $120,571.37 or any part thereof. It is further alleged that on January 13, 1930, a judgment was rendered in favor of Bronstein and against the defendant in the First Chamber of the Tribunal of Commerce of the Department of Seine, Paris, France, for the sum of $120,571.37, with interest, predicated upon the claim heretofore set forth. Said claim and the judgment have been assigned by Bronstein to the plaintiff.

Plaintiff's status as a judgment creditor has been attacked upon two grounds: (1) That no valid judgment can be rendered against a dissolved corporation any more than against a dead person (*Nankivel* v. *Omsk All-Russian Government*, 237 N. Y. 150; *Issaia* v. *Russo Asiatic Bank*, 266 id. 37); (2) that our courts will not recognize French judgments since France gives no effect to our judgments (*Hilton* v. *Guyot*, 159 U. S. 113; *Cowans* v. *Ticonderoga Pulp & Paper Co.*, 127 Misc. 898; affd., 219 App. Div. 749). Since the decision of the Court of Appeals in *Johnston* v. *Campagnie Generale Transatlantique* (242 N. Y. 381) it is difficult to see how *Hilton* v. *Guyot* can be considered any longer to be good law in New York.

But in any event it is unnecessary to consider the validity of the French judgment in dete mining this motion. The plaintiff alleges a promise by the defendant, based upon good consideration, to pay or make available to his assignor in New York the sum of $120,571.37 and that this promise was never performed. *Prima facie*, then, a debt arose in favor of Bronstein and against the defendant in that amount. And the plaintiff, as Bronstein's assignee, is, *prima facie*, a creditor of the defendant. To overcome this conclusion Gherman and Tillman, intervening as interested third parties, point out that during the war foreign exchange could not be freely bought and sold in Russia; that for purchases of foreign exchange permission of the government was required, through the chancellery; that no such permit was obtained in the present case; that for this reason the contract was illegal and the defendant merely had the duty of repaying Bronstein the rubles which had been paid to it. As a ruble creditor, it is asserted, Bronstein and his assignee have no standing in our courts, since under the case of *Dougherty* v. *Equitable Life Assurance Society* (266 N. Y. 71) these rubles have no more than a nominal value.

All these things the third parties would have this court conclude upon a record which is barren of any facts save those alleged in the complaint and the plaintiff's affidavits. That would be stretch-

ing the doctrine of judicial notice to the breaking point. There is nothing in section 391 of the Civil Practice Act which requires or authorizes the court to take judicial notice of foreign law. (See *Credito Italiano* v. *Rosenbaum,* 246 App. Div. 687, dissenting opinion of UNTERMYER, J.) There is no pleading or proof of the Russian law at the time of this transaction; nor of whether or not a government permit was obtained; nor of facts making performance by the defendant illegal or impossible; nor of the value of rubles. All these things the court is to assume merely from statements made upon oral argument or in the briefs. This the court cannot do. True, cases are cited which upon their respective records have adjudicated issues of fact in the manner here contended for. Thus the case of *Dougherty* v. *Equitable Life Assurance Society* (*supra*) decided upon the proof submitted in that case and upon the findings of a referee that Russian rubles had only a nominal value in 1922. But the *Dougherty* case differs on this question of fact with *Matter of People* (*First Russian Insurance Co.*) (255 N. Y. 428), wherein CARDOZO, Ch. J., said: " The decision must be understood to be confined to the record now before us. We do not attempt to say to what extent a different record, exhibiting in a different light the history of the ruble, would exact a different conclusion " (p. 432).

In other words, the cases cited by the third parties herein merely decide questions of fact. As such, they are binding upon the parties to the record, but are not *stare decisis* in cases involving different litigants. " The doctrine of *stare decisis* relates to legal principles, not to facts." (*Matter of Peiser,* 79 Misc. 668, at p. 671.)

There being nothing in the record to controvert the allegations in the complaint and in the affidavits upon which the various orders here under attack were made, this motion must be denied *in toto.*

Motion denied, with ten dollars costs. Submit order.