## PUENTE v. SPANISH NAT. STATE.

### No. 129.

Circuit Court of Appeals, Second Circuit.

Dec. 6, 1940.

---

[1] Not released by court at date of publication.

Julius I. Puente, of New York City, for plaintiff-appellant pro se.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Plaintiff has sued the "Spanish National State, as a Juristic Person," for professional services rendered and makes affidavit that he caused service of the summons and a copy of the complaint to be made "on Miguel Espinoso, who, your deponent states upon information and belief, is the managing agent of said defendant." No appearance was entered for defendant, but the clerk of the district court received an "alleged letter" (as the plaintiff puts it) "respectfully submitted" over the signature of the Ambassador to the Spanish Government in the United States, wherein the writer acknowledges receipt from the Spanish Consul General in New York of a copy of the summons and complaint and states that, in returning the papers, he desires to point out "that under prevailing principles of international law the Spanish Government as a Sovereign State is not subject to suit in your Court without its consent, which in this case it declines to accord." Further, it is said that the Spanish Consul General in New York did not accept service, but definitely declined it, "and thereupon the individuals accepting to serve the papers left [them(?)] under the door at the Consulate General where they were subsequently found." And the purpose of the letter is stated to be "solely to invite the attention of this Court to its lack of jurisdiction to adjudicate this matter." The court denied plaintiff's motion to direct the clerk to enter default judgment for plaintiff under Federal Rule 55, 28 U.S.C.A. following section 723c, stating that it had "no jurisdiction to adjudicate a claim against a friendly foreign state," and plaintiff appeals.

We do not stop to consider whether adequate service of process was shown in any event, but pass at once to the important question, how the conceded immunity of a friendly foreign state from suit without its consent is to be presented to a court. Plaintiff claims that this immunity is a waivable defense, waived by failure of the state to appear and to plead and prove it in the action. He relies on a series of cases dealing with the claims of foreign states made to vessels already in the jurisdiction of the federal courts, where it has been held that the state must proceed either through official diplomatic channels or through formal defense in the action, not by mere "suggestion" made on its behalf. Ex parte Muir, 254 U.S. 522, 41 S.Ct. 185, 65 L.Ed. 383; The Pesaro, 255 U.S. 216, 41 S.Ct. 308, 65 L.Ed. 592; Compania Espanola v. The Navemar, 303 U.S. 68, 58 S.Ct. 432, 82 L.Ed. 667; The Navemar, 2 Cir., 103 F.2d 783. Compare Banco de Espana v. Federal Reserve Bank, 2 Cir., 114 F.2d 438, 443, referring also to Lamont v. Travelers Ins. Co., 281 N.Y. 362, 24 N.E.2d 81, 85; Déak, The Plea of Sovereign Immunity in the New York Court of Appeals, 40 Col.L.Rev. 453, 1940; Feller, Procedure in Cases Involving Immunity of Foreign States in Courts of the United States, 25 Am.J.Int. L. 83, 1931.

Before the decision in Ex parte Muir, supra, in 1921, it had been the practice of the federal courts regularly to accept such a "suggestion" from either the

state or an amicus curiae. Compare The Adriatic, 3 Cir., 258 F. 902, citing cases; The Carlo Poma, 2 Cir., 259 F. 369, decree vacated for lack of jurisdiction of the appeal in 255 U.S. 219, 41 S.Ct. 309, 65 L.Ed. 594; The Claveresk, 2 Cir., 264 F. 276. The stricter rule there announced has created problems, as Professors Déak and Feller point out, both in defining the limits of the rule and in making sure that friendly international relations are not prejudiced. But there appears to be a rather simple and clear-cut distinction between those cases and the present one. When a court appears to have all the elements of jurisdiction of an action, it is not improper to require of even a sovereign who would oust it of that jurisdiction that he furnish due proof to support his claim. The explanation appears in Ex parte Muir, supra, 254 U.S. at page 532, 41 S.Ct. at page 187, 65 L.Ed. 383, where it is said: "Prima facie the District Court had jurisdiction of the suit and the vessel [case cited], and to call that jurisdiction in question was to assume the burden of showing what was in the way of its existence or exertion. Merely to allege that the vessel was in the public service and under the control of the British government as an admiralty transport was not enough. These were matters which were not within the range of judicial notice and needed to be established in an appropriate way."

In all of these cases there was within the jurisdiction of the court specific property to which the foreign state desired to make claim. It is perhaps not proper to limit the rule merely to actions in rem; as Judge L. Hand points out in Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc., D.C.S. D.N.Y., 300 F. 891, 893, the reasons may be as strong in the case of an action in personam against an agent of the sovereign. "But when the party before the court as claimant or as defendant is neither the sovereign nor his ambassador, it is now the established rule that the claim will not be recognized, unless by diplomatic intervention." Compare, also, Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc., 2 Cir., 32 F.2d 195, certiorari denied 280 U.S. 579, 50 S.Ct. 32, 74 L.Ed. 629; and see Oliver American Trading Co. v. Government of the United States of Mexico, 2 Cir., 5 F.2d 659, certiorari denied 267 U.S. 596, 45 S.Ct. 352, 69 L.Ed. 805, where defendant's property in this country had been attached.

In this action, where there is no vestige of apparent jurisdiction, there would seem to be no reason why the plaintiff must not proceed in the usual way to show jurisdiction by alleging and proving defendant's consent to be sued; nor why, for lack thereof, the court, acting on its own motion or on appropriate suggestion under Rule 12(h), should not dismiss. And while the authorities are not numerous, presumably because such a suit is unusual, they all point that way. Courts take judicial notice of the sovereign character of a defendant and, in case of doubt, address their own inquiries to the executive. Duff Development Co. v. Government of Kelantan [1924], A.C. 797, 813; Déak, supra, 40 Col.L.Rev. at 455–456; Sack, Immunity of Instrumentalities of Foreign States, 26 Ill.L.Rev. 215, 220-222, 1931. Both English and American courts have held that a sovereign need not affirmatively assert this immunity. Mighell v. Sultan of Johore [1894], 1 Q.B. 149; Nankivel v. Omsk All-Russian Government, 237 N.Y. 150, 157, 142 N.E. 569; Mason v. Intercolonial Ry. of Canada, 197 Mass. 349, 83 N.E. 876, 16 L.R.A.,N.S., 276, 125 Am.St.Rep. 371, 14 Ann.Cas. 574; cf. also People of Porto Rico v. Manuel Rosaly y Castillo, 227 U.S. 270, 33 S.Ct. 352, 57 L.Ed. 507; Kawananakoa v. Polyblank, 205 U.S. 349, 27 S.Ct. 526, 51 L.Ed. 834. So it has been held that a judgment by default should be set aside. De Haber v. Queen of Portugal, 17 Q.B. 196, 1851; Déak, supra, 40 Col.L.Rev. at 457, 463; Feller, supra, 25 Am.J.Int.L. at 95, 96; Harvard Research in Int.Law, Competency of Courts in Regard to Foreign States, 1932, 531, 532, 538, quoting several foreign cases. The Harvard draft convention is based on this conclusion. Thus, by its terms express consent to sue is required except in certain special cases, involving primarily those where there is a res within the jurisdiction of the court (Art. 8; cf. Arts. 7, 9-12); even with these detailed specifications, it was thought also necessary to require express permission of the court before any action could be brought. Art. 19. The comment to this article (p. 680) demonstrates the lack of necessity for affirmative action by the respondent state. This is a reasonable and rational view; no court should be expected to stultify itself by entering a judgment which it knows cannot be enforced against protest.

Affirmed.